UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MARCUS DWANE MANNING JR.,

                Petitioner,

v.

SHAWN BREWER,

                Respondent.

_____/

Case No. 1:16-cv-1416

Honorable Janet T. Neff

## **REPORT AND RECOMMENDATION**

       This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Marcus Dwane Manning is incarcerated with the Michigan Department of Corrections at the G. Robert Cotton Correctional Facility in Jackson County, Michigan.  On February 9, 2012, a Kent County Circuit Court jury found Petitioner guilty of two counts of transporting a female for prostitution, MICH. COMP. LAWS § 750.459.  The trial court sentenced Manning as a habitual offender-fourth offense, MICH. COMP. LAWS § 769.12, to serve concurrent terms of 15 to 40 years' imprisonment.   On December 5, 2016, Petitioner filed his habeas corpus petition which, as amended, raises four grounds for relief, as follows:

    I.       Mich. Comp. Laws § 750.459 violates the commerce clause of the United States Constitution because it is [an] invasion of Congress['] power to regulate commerce among the states.

    II.     Mich. Comp. Laws § 750.459 is unconstitutional as applied to defendant because [the] prosecutor relied on the theory petitioner transported females from Florida for prostitution. [Preemption]

    III.    The jury instructions on elements of transporting a female for prostitution was [sic] incorrect.

    IV.    The trial court erred in denying the defendant['s] motion to suppress evidence obtained by searching the room at [G]atehouse [S]uites.

(Am. Pet., ECF No. 9, PageID.105-109.)  Respondent has filed an answer to the petition (ECF No. 13) stating that the petition should be denied because Petitioner's habeas issues are without merit or procedurally defaulted.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are without merit.  Accordingly, I recommend that the petition be denied.

## Discussion

### I.    Factual allegations

In the late summer of 2011, Shakira Rogers, a 16-year-old girl, and Danielle McMillon, an 18-year-old girl, traveled with Petitioner from Orlando, Florida to Grand Rapids, Michigan by bus. (Trial Tr. II, ECF No. 14-5, PageID.249, 262.)  The girls went with Petitioner to his family's home for a few hours and then set up shop at a Super-8 motel; Petitioner took pictures of the girls and posted them on the internet to solicit calls.  (*Id*., PageID.250, 262-264.)  The girls testified that customers responded to the ads; the girls serviced customers at the motel or went on "outcalls" to other locations. (*Id*., PageID.252-253, 256, 264.)  Over the four or five weeks they conducted business in Kent County, Petitioner and the girls stayed at three different motels and visited other motels and homes to perform services.  Both girls testified that Petitioner drove them at least some of the time in connection with the hotel moves or their provision of services to customers.  (*Id*., PageID.256, 264-265.)

Shakira testified at Petitioner's trial.  Danielle refused to appear.  The jury heard her testimony anyway through the reading of the transcript from Petitioner's preliminary examination.  The jurors also heard testimony from hotel personnel; the mother of Petitioner's child; another girl, Erica, who knew Shakira and Danielle, advertised her services on the internet, and performed services in response to calls; five police officers who either participated in the investigation or the arrest of Petitioner; a computer/phone forensics specialist; and a forensic digital media analyst.  The defense presented testimony from Petitioner's sister and his mother.

The jury found Petitioner guilty of the first count, transporting Shakira for the purpose of prostitution, and guilty of the second count, transporting Danielle for the purpose of prostitution; but, the jury found Petitioner not guilty of a third count, human trafficking of Danielle.

Petitioner, with the assistance of counsel appealed his convictions and sentences.  In the appeal brief that Petitioner filed with the assistance of counsel, Petitioner raised several issues including habeas issue II (MICH. COMP. LAWS § 750.549 is unconstitutional as applied to Petitioner) and habeas issue IV (the trial court erred when it failed to suppress the evidence seized at Gatehouse Suites).  (Appellant's Br., ECF No. 14-10, PageID.381.)  In his Standard 4 brief,[1] Petitioner raised several more issues, including habeas issue I (MICH. COMP. LAWS § 750.549 violates the Commerce Clause) and habeas issue III (the jury instructions were incorrect).  (Appellant's Standard 4 Br., ECF No. 14-10, PageID.424-425.)  By *per curiam* opinion issued November 14, 2013, the Michigan Court of Appeals rejected Petitioner's challenges and affirmed his convictions and sentences.  (Mich. Ct. App. Op., ECF No. 14-10, PageID.356-366.)

Petitioner filed a *pro per* application for leave to appeal the Michigan Court of Appeals decision in the Michigan Supreme Court.  Petitioner raised several issues, including the four issues he raises in the instant petition.  (Appellant's Appl. for Leave to Appeal, ECF No. 14-11, PageID.532-553.)  The Michigan Supreme Court denied leave to appeal by order entered May 27, 2014.  (Mich. Ord., ECF No. 14-11, PageID.528.)  Petitioner filed a petition for writ of certiorari in the United States Supreme Court.  His petition was denied by order entered October 6, 2014.  (Op., ECF No. 2-1, PageID.80.)

Petitioner returned to the trial court while his petition for writ of certiorari was pending. On September 18, 2014, Petitioner filed a motion for relief from judgment under MICH. CT. R. 6.500

---

[1] Standard 4 permits an appellant to file a brief *in propria persona* covering issues the appellant wants to raise on appeal even though his counsel does not.  Mich. Admin. Order No. 2004-6.

*et seq.* The motion raised seven issues, including several challenging the jury instructions. (Def's Br., ECF No. 14-12.) The trial court denied Petitioner's motion by order entered October 27, 2014. (Kent Cnty. Cir. Ct. Ord., ECF No. 14-13.) Petitioner sought leave to appeal that decision in the Michigan Court of Appeals and the Michigan Supreme Court. Those courts denied leave by orders entered April 27, 2015 and May 2, 2016, respectively. (Mich. Ct. App. Ord., ECF No. 14-14, PageID.706; Mich. Ord., ECF No. 14-15, PageID.860.) Petitioner then filed the instant petition.

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have

appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

A.     The enforceability of MICH. COMP. LAWS § 750.459

Petitioner challenges the enforceability of Michigan's transportation for prostitution statute on two related but distinct grounds: first, Petitioner contends that the statute violates the dormant Commerce Clause doctrine (habeas issue I); and second, Petitioner argues that the statute is preempted by the Mann Act (habeas issue II).

5

1.    The dormant commerce clause

The Commerce Clause grants Congress power "[t]o "regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. "Although the Clause is framed as a positive grant of power to Congress, '[the Supreme Court has] consistently held [the] language to contain a further, negative command, known as the dormant Commerce Clause, prohibiting certain state [regulation] even when Congress has failed to legislate on the subject.'" *Comptroller of Treas. of Maryland v. Wynne*, 135 S. Ct. 1787, 1794 (2015) (quoting *Oklahoma Tax Comm'n v. Jefferson Lines Inc.*, 514 U.S. 175, 179 (1995)). The Court explained:

> Under our precedents, the dormant Commerce Clause precludes States from "discriminat[ing] between transactions on the basis of some interstate element." *Boston Stock Exchange v. State Tax Comm'n*, 429 U.S. 318, 332, n. 12 (1977). This means, among other things, that a State "may not tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State." *Armco Inc. v. Hardesty*, 467 U.S. 638, 642 (1984). "Nor may a State impose a tax which discriminates against interstate commerce either by providing a direct commercial advantage to local business, or by subjecting interstate commerce to the burden of 'multiple taxation.'" *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 458 (1959) (citations omitted).

*Wynne*, 135 S. Ct. at 1794. Generally, a regulation will violate the dormant Commerce Clause if it "favors in-state businesses over out-of-state businesses." *Dog Pound LLC v. City of Monroe, Mich.*, 558 F. App'x 589, 593 (6th Cir. 2014). An even-handed regulation that effectuates a legitimate local public interest might still run afoul of the dormant Commerce Clause if the burden the regulation imposes on interstate commerce is excessive in relation to the putative local benefit. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

The Michigan Court of Appeals gave short shrift to Petitioner's dormant Commerce Clause argument:

> Defendant's argument that MCL 750.459 violates the Commerce Clause of the United States Constitution presents the same argument made by defendant in his original brief on appeal with regard to the transportation of the women and need not be reexamined

6

as this case involved the transportation of females within the state of Michigan and not in interstate commerce.

(Mich. Ct. App. Op., ECF No. 14-10, PageID.366 n.10.)  The state appellate court centered its analysis on the fact that Petitioner's crime was in no way "interstate."  That factual determination finds ample support in the record.  Although Petitioner transported Shakira and Danielle from Orlando, Florida to Grand Rapids, Michigan by bus, the prosecutor made no effort to prove that the transportation **into** Michigan violated the statute.  Rather, the prosecutor elicited testimony to show, and argued, that Petitioner's transport of Shakira and Danielle on outcalls and from hotel to hotel, entirely **within** the State of Michigan, violated the statute.  Thus, to the extent the Michigan statute is intended to outlaw the act of crossing the state border into Michigan for the purpose of prostitution, it was not so applied to Petitioner.[2]

Even if Petitioner had been convicted for transporting Shakira and Danielle from Florida into Michigan, he could not show a dormant commerce clause violation.  The statute at issue here treats in-state transporters for the purpose of prostitution exactly the same way it treats out-of-state transporters for the purpose of prostitution.[3]  Accordingly, there appears to be no dormant Commerce Clause violation on the face of the statute, based on the purpose of the statute, or given the practical effect of the statute.  *American Beverage Ass'n v. Snyder*, 735 F.3d 362, 370 (6th Cir. 2013) ("'A [state regulation] can discriminate against out-of-state interests in three different ways: (a)

---

[2] For all practical purposes, however, unless one can perch on the Michigan side of the line that is the state boundary, there can be no transportation into Michigan unless there is also transportation within Michigan.  A common sense reading of the statute suggests that the state legislature was not attempting to address interstate commerce in any way; rather, it appears the legislature sought to outlaw transportation for the purpose of prostitution if the transportation occurred within Michigan, without regard to whether the origin or the ultimate destination fell within the state.

[3] The statute provides:

Any person who shall knowingly transport or cause to be transported, or aid or assist in obtaining transportation for, by any means of conveyance, into, through or across this state, any female person for the purpose of prostitution or with the intent and purpose to induce, entice or compel such female person to become a prostitute shall be guilty of a felony . . . .

MICH. COMP. LAWS § 750.459.

facially, (b) purposefully, or (c) in practical effect.'"); *see also Dog Pound*, 558 F. App'x at 593 (finding no dormant Commerce Clause violation where ordinance treated in-state and out-of-state businesses the same way); *Dayson v. Caruso*, No. 2:12-cv-455, 2013 WL 1847445 at *9-10 (W.D. Mich. May 2, 2013) ("Plaintiff does not make any allegations whatsoever that the complained of MDOC policies benefit in-state economic interests by burdening out-of-state competitors. Consequently, his allegations fail . . . .").

Moreover, the Michigan statute would survive the *Pike* test because it imposes absolutely no burden, or at least no additional burden, on interstate commerce. Interstate transportation for the purpose of prostitution has been banned by the Mann Act, 18 U.S.C. § 2421, for over a century.[4] In short, Petitioner's dormant Commerce Clause challenge is patently frivolous; the crimes of which he was convicted were neither "interstate" nor were they legitimately "commerce." The Michigan Court of Appeals' rejection of Petitioner's dormant Commerce Clause challenge was neither contrary to, nor an unreasonable application of, clearly established federal law.

### 2. Preemption

Recognizing the overlap between the prohibitions of MICH. COMP. LAWS § 750.459 and the Mann Act, Petitioner next argues that the latter preempts the former with regard to interstate transportation for purposes of prostitution. The Supreme Court recently described the scope of federal preemption as follows:

> The Supremacy Clause provides that "the Laws of the United States" (as well as treaties and the Constitution itself) "shall be the supreme Law of the Land. . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2. Congress may consequently pre-empt, *i.e.*, invalidate, a state law through

---

[4]The federal statute has been amended several times over the last century. It now provides:

> Whoever knowingly transports any individual in interstate or foreign commerce, or in any Territory or Possession of the United States, with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2421.

federal legislation.  It may do so through express language in a statute.  But even where, as here, a statute does not refer expressly to pre-emption, Congress may implicitly pre-empt a state law, rule, or other state action.  *See Sprietsma v. Mercury Marine*, 537 U.S. 51, 64 (2002).

It may do so either through "field" pre-emption or "conflict" pre-emption.  As to the former, Congress may have intended "to foreclose any state regulation in the area," irrespective of whether state law is consistent or inconsistent with "federal standards." *Arizona v. United States*, 567 U.S. ——, —— 132 S.Ct. 2492, 2502 (2012) (emphasis added).  In such situations, Congress has forbidden the State to take action in the field that the federal statute pre-empts.

By contrast, conflict pre-emption exists where "compliance with both state and federal law is impossible," or where "the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *California v. ARC America Corp.*, 490 U.S. 93, 100, 101 (1989).  In either situation, federal law must prevail.

*Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591, 1594-95 (2015).

The Michigan Court of Appeals reviewed the three types of preemption referenced in *Oneok*.  (Mich. Ct. App. Op., ECF No. 14-10, PageID.361.)  The court noted that Petitioner conceded that neither express nor conflict preemption applied, leaving only field preemption.  (*Id*.)  Petitioner argued to the state court, as he does here, that the Mann Act is preemptive because "Congress intended to cover the entire field of Interstate Commerce of Transporting Females for the purpose of Prostitution . . . ."  (Pet'r's Br., ECF No. 2, PageID.45.)

The state appellate court rejected the argument as misplaced based on its determination that Petitioner was not convicted for interstate transportation; rather, Petitioner was convicted based only on intrastate transportation.  (Mich. Ct. App. Op., ECF No. 14-10, PageID.361-362.)  Even if Congress intended to preempt the entire field of interstate transportation, it would have no effect on the state's prosecution of Petitioner for intrastate transportation.

The Michigan Court of Appeals' determination with regard to the acts for which Petitioner was convicted is well-supported by the record.  The court's further determination that the Mann Act would not preempt conviction for intrastate transportation is neither contrary to, nor an

unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on his preemption argument.

B.    <u>The jury instructions</u>

In the Michigan appellate courts, Petitioner challenged the jury instructions on several grounds.  In this Court, Petitioner focuses on the instructions regarding the element of "purpose."  (Am. Pet., ECF No. 9, PageID.108.)  The allegedly defective instruction reads as follows:

> Then count one is prostitution, transporting a female.  The defendant is charged with the crime of prostitution, transporting a female.   To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> First that the defendant knowingly transported or caused to be transported or aided or assisted in transporting a female, Shakiera Rogers.
>
> Second that this transportation occurred while the defendant and Shakiera were either inside the State of Michigan, coming to the State of Michigan, or traveling across the State of Michigan.
>
> Third, that when the defendant transported Shakiera Rogers, he intended to assist Shakiera Rogers in engaging in the practice of prostitution.

(Trial Tr. III, ECF No. 14-7, PageID.346.)   Petitioner contends that the trial court erred when he included in the elements of the crime the intention to assist in prostitution which, according to Petitioner, is an entirely different thing than transporting for the purpose of prostitution.  Petitioner argues:

> [T]he intent element in the judge's instruction is erroneous in its use of the phrase "to assist."  The statute simply does not criminalize transporting a female with the intent "to assist" her in prostitution.  Rather, it criminalizes assisting <u>the transportation</u> of a female for the purpose "of prostitution or . . . to induce, entice or compel such female to become a prostitute . . . "  MCL 750.459.  This distinction might be subtle, but it is very significant.  Under the plain language of the statute, a person could legally assist the transportation of a female with the intent <u>to assist her</u> in engaging in prostitution while still not <u>intending</u> the prostitution itself (or not inending "to induce, entice or compel" her to become a prostitute).  In other words, under the statute, a person could legally know that a woman is a prostitute and that <u>she</u> intend to engage in prostitution and he could intend <u>to assist her</u> in engaging in prostitution (because, for example, he believes she will engage in prostitution anyway, and he would rather see her have food and shelter than not) while at the same time not <u>himself</u> intending (or having as <u>his</u> purpose) prostitution.  It is the <u>defendant's</u> intent that the transportation lead to prostitution that matters under the statute, but the jury instructions allow the jury to

10

find Defendant guilty of intending to assist the female in prostitution, and he was not charged with aiding and abetting a prostitute.

(Std. 4 Br., ECF No. 14-10, PageID.460.)  The court rejected the argument:

> Defendant also takes issue with the court's instruction that defendant must have intended to "assist" the female in engaging in prostitution.  Defendant identifies the distinction as subtle, and presents a confusing argument with regard to why the instruction was erroneous.  Nonetheless, a review of the trial court's instruction does not allow the jury to convict defendant solely for assisting the female in prostitution.

(Mich. Ct. App. Op., ECF No. 14-10, PageID.364.)

Not every claimed instructional error rises to the level of a constitutional violation.  "Before a federal court may overturn a conviction resulting from a state trial in which [the challenged] instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."  *Cupp v. Naughten*, 414 U.S. 141, 146 (1973).  The Supreme Court has defined the subcategory of instructional errors that warrant habeas relief very narrowly.  *Estelle v. McGuire*, 502 U.S. 62, 73 (1991) (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990) ("Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.").

The Due Process Clause requires that every element of the charged crime be proven beyond a reasonable doubt.  *In re Winship*, 397 U.S. 358, 364 (1970).  When a jury is not properly instructed with regard to the elements of the charged crime, the due process right to proof beyond a reasonable doubt is implicated.  *Sandstrom v. Montana*, 442 U.S. 510 (1979).  It is the prerogative of the state, however, to define the elements of the crime and the federal courts are bound by their determination.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979) ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses.

Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law. ").

Both the instruction given and the instruction proposed by Petitioner appear to be valid statements of the requirements of MICH. COMP. LAWS § 750.459. But this Court's opinion on that state law issue is immaterial. Petitioner's fine parsing of the "intent" element is outside the bounds of permissible inquiry on habeas review. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). Accordingly, the state court's determination regarding the elements of the crime charged bind this Court; the determination is "axiomatically correct" and conclusively resolves Petitioner's instructional challenge. *Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990). Under the circumstances, the state court's determination was neither contrary to nor an unreasonable application of clearly established federal law. Therefore, Petitioner is not entitled to habeas relief.

D.    Motion to suppress

Petitioner next claims that the trial court erred when it failed to suppress the evidence seized from Room 224 of the Gatehouse Suites.  Petitioner claims the search warrant was invalid because it was based on false information.  Petitioner's claim is barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976).  *See Queen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996) (noting that it is well-settled that *Stone v. Powell* bars Fourth Amendment claims); *see also Newman v. Wengler*, No. 13–36185, 2015 WL 3700161, at *2 (9th Cir. June 16, 2015) (holding, consistent with the Tenth and Seventh Circuits, that *Stone* survives the passage of AEDPA).

In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim.  *Stone,* 428 U.S. at 494; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).  The doctrine of *Stone v. Powell* applies when the state has provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court has not been frustrated by failure of that mechanism.  *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985).  If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error.  *Id*. at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

In Petitioner's case, both prongs of the *Stone v. Powell* doctrine are satisfied.  First, it is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim before trial.  Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures.  *See People v. Margelis*, 186 N.W. 488 (Mich. 1922).  After *Mapp v. Ohio*, 367 U.S. 643 (1961), the Michigan

13

courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment.  *See, e.g., People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982).  Consequently, Michigan affords criminal defendants an appropriate mechanism by which to raise Fourth Amendment challenges.

Second, to satisfy the remaining prong of the *Stone v. Powell* doctrine, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down.  *See, e.g., Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court completely ignored Fourth Amendment claim).  The Sixth Circuit pointedly has held that the doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination of the Fourth Amendment claim to have been in "egregious error."  *Gilbert*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner has not alleged any facts showing that the state's mechanism has broken down.  Rather, it is clear that the Michigan courts gave Petitioner's Fourth Amendment claim full and proper consideration.  The record reveals that, on December 16, 2011, the trial court held a hearing on Petitioner's motion. (Mot. to Suppress Tr., ECF No. 14-3.)  The motion was based on the identification of Petitioner in the search warrant as "Marcellus" Manning rather than "Marcus" Manning.  The trial court denied Petitioner's motion and declined to hold a *Franks* hearing.[5]  (*Id*.)

Although Petitioner disagreed with the result, he does not suggest that the hearing was flawed in anyway. The transcript shows that Petitioner had an unfettered opportunity to present his arguments regarding the allegedly illegal search to the trial court. Petitioner makes no claim that he was obstructed in any way from fully presenting his arguments on this issue or that the trial court failed to consider the issue.

---

[5] In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court specified the circumstances under which an evidentiary hearing must be held regarding a claim that an affidavit supporting a search warrant is invalid because it includes an intentional or reckless false statement that was necessary to a finding of probable cause.

Finally, nowhere in the brief filed by counsel in the court of appeals does Petitioner suggest to the appellate court that the trial court failed to give proper consideration to his arguments regarding suppression. Instead, Petitioner simply attempts to sway the appellate court to rule differently on the issue based on the same arguments that were before the trial court. The Michigan Court of Appeals reviewed Petitioner's appeal and determined that it lacked merit. Petitioner applied for leave to appeal to the Michigan Supreme Court, which denied his application. Therefore, even if this Court were to disagree with the determination of the Michigan courts, that disagreement would be insufficient to prevent the application of the *Stone v. Powell* doctrine to preclude federal habeas review of Petitioner's Fourth Amendment claim. *Gilbert*, 763 F.2d at 824.

Because both prongs of the *Stone v. Powell* doctrine are satisfied, Petitioner's claim of illegal search and seizure is barred on habeas review.

### Certificate of Appealability

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken.  28 U.S.C. § 2253(c)(1).  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this

standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

### **Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).


Dated: December 6, 2017                         /s/ Ellen S. Carmody
                                             ELLEN S. CARMODY
                                             U.S. Magistrate Judge


### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).